**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 22-2608, 22-2778
_____

CROZER CHESTER MEDICAL CENTER;
DELAWARE COUNTY MEMORIAL HOSPITAL,
                    Petitioners / Cross-Respondents

v.

NATIONAL LABOR RELATIONS BOARD,
                    Respondent / Cross-Petitioner

*Pennsylvania Association of Staff Nurses and Allied Professionals,
Intervenor

*(Pursuant to Clerk Order dated 9/22/22)
_____

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board
(NLRB Case Nos. 04-CA-172296 and 04-CA-172313)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
(April 18, 2023)

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*.

(Filed: April 20, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Crozer-Chester Medical Center and Delaware County Memorial Hospital (collectively, Petitioners) petition for review of a National Labor Relations Board order requiring them to provide certain documents to the Pennsylvania Association of Staff Nurses and Allied Professionals (PASNAP). The Board requests enforcement of that order. We will deny Crozer's petition for review and grant the Board's cross-application for enforcement essentially for the reasons stated in the Board's opinion.

I

At all times relevant to this appeal, Crozer-Keystone Health System (Crozer) was a nonprofit healthcare network comprised of several hospitals and medical facilities, including Petitioners. Crozer's employees were organized into ten bargaining units, represented by five unions. PASNAP was one of those unions.

In January 2016, Crozer informed its employees by letter that it was selling its assets to Prospect Medical Holdings, Inc. The letter stated that unionized employees would be offered employment "subject to initial terms set by Prospect," which was a for-profit corporation. CAR 232–33. The letter also stated that certain services would "stay in place or be expanded" and that Prospect would assume Crozer's pension liability. *Id.*

PASNAP requested a copy of the complete Asset Purchase Agreement between Crozer and Prospect, but Crozer denied the request. PASNAP then filed an unfair labor practice charge with the Board, claiming Crozer's denial violated the National Labor Relations Act. PASNAP asserted that the Agreement contained information relevant to collective bargaining, including over the effect of the sale on the terms and conditions of

2

union members' employment. *See NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435–36 (1967) ("There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties."). Prior to Board resolution, PASNAP obtained a publicly filed copy of the body of the Agreement, but it still sought the Agreement's attachments, labeled "Schedules" and "Exhibits." An Administrative Law Judge found that Crozer's refusal to turn over the Agreement, including the attachments, violated the Act because portions of the Agreement were relevant to PASNAP's bargaining role. It ordered Crozer to produce the entire Agreement and all attachments. A panel of the Board adopted the ALJ's order.

Crozer petitioned our Court for review, and we granted in part and denied in part its petition. *Crozer-Chester Med. Ctr. v. NLRB*, 976 F.3d 276, 280 (3d Cir. 2020). We agreed with the Board that Crozer engaged in an unfair labor practice and that certain attachments to the Agreement were relevant. *Id.* at 285. But we held that the Board abused its discretion when it required Crozer to produce the entire Agreement, including all the attachments, rather than only the relevant parts. *Id.* at 296. So we remanded to the Board to determine which attachments were relevant. *Id.*

On remand, a panel of the Board, with Board Member John F. Ring dissenting, ordered Crozer to produce 21 attachments. The Board concluded that 11 attachments were presumptively relevant "because, from their titles and/or evidence presented at the hearing, including the brief descriptions of the schedules included in the [Agreement] and testimony from [PASNAP], they appear to relate to unit employees' wages, conditions of employment, benefits, and potential layoffs," and that Crozer had not rebutted the

3

presumption of relevance. CAR 793–95. The Board also found that PASNAP had established the relevancy of 10 more attachments that were not presumptively relevant. It then determined that the remaining attachments were not relevant. Crozer petitioned this Court for review, the Board cross-applied for enforcement of its order, and PASNAP intervened.

II

The Board had jurisdiction under 29 U.S.C. § 160(a). We have jurisdiction under 29 U.S.C. §§ 160(e) and (f). The Board contends that we are jurisdictionally barred from addressing some of Crozer's arguments because Crozer failed to press them before the Board. We disagree.

Our jurisdiction to review Board decisions is limited by statute: "No objection that has not been urged before the Board . . . shall be considered by the court" except in "extraordinary circumstances." 29 U.S.C. § 160(e). The "crucial question" is "whether the Board received adequate notice of the basis for the objection." *NLRB v. FedEx Freight, Inc.*, 832 F.3d 432, 437 (3d Cir. 2016) (cleaned up). The Board claims that Crozer makes for the first time on appeal specific arguments about the relevancy of individual attachments. But Crozer argued before the Board that none of the attachments was relevant because PASNAP's evidence was too speculative. Crozer contests the relevancy of specific attachments for that same reason. We conclude that Crozer's argument that the evidence was too speculative to establish the relevance of *any* attachment was "specific enough to place the agency on notice," *Atl. City Elec. Co. v. NLRB*, 5 F.4th 298, 306 (3d Cir. 2021) (citation omitted), of Crozer's objection that the

4

evidence on each individual attachment was too speculative. So Crozer's arguments are properly before us.

III

Crozer had to turn over portions of the Agreement that were "relevant and[] therefore reasonably necessary to [PASNAP's] role as bargaining agent." *Crozer-Chester*, 976 F.3d at 285 (quoting *Curtiss-Wright Corp. v. NLRB*, 347 F.2d 61, 68 (3d Cir. 1965)). Crozer faces a doubly difficult challenge in disputing the Board's determination that the 21 identified attachments were relevant. First, the relevancy standard is "undemanding": "Courts and the Board employ a liberal and broad discovery-type standard" which "requires only the probability that the desired information is relevant." *Id.* (cleaned up).

Second, our standard of review is deferential; we will deny the petition if the Board's factual findings on relevancy are supported by substantial evidence given the whole record. *Id.* at 283–84. Crozer argues our review should be de novo. But Crozer does not challenge the legal standard the Board employed; it challenges the Board's factual determination that the attachments were relevant under the proper standard. Deferential review is therefore proper. *See id.* at 284, 286.

A

We begin with the attachments the Board found presumptively relevant. "Wage and related information pertaining to employees in the bargaining unit is presumptively relevant," so the burden is on the employer to rebut its relevance. *Id.* at 286–87. With one exception, discussed at the end of this section, substantial evidence supports the Board's

5

conclusion that certain attachments were presumptively relevant because there was a "probability" that they contain information related to wages, benefits, potential layoffs, or permanent department closures, and that Crozer failed to rebut this presumption. *See id.* at 285.

The titles of certain attachments alone plainly relate to employee benefits. These include Schedules 1.1(s) ("Crozer Assumed Benefit Plan Assets"), 1.3(k) ("Crozer Retention Bonuses"), 2.4 ("Crozer Pension Plan Actuarial Assumptions, Terms, and Conditions"), 6.2(l) ("Crozer Pension Contributions Schedule"), and 11.10(a) ("Prospect Post-Closing Employee Benefits") and Exhibits G ("DB [Defined Benefit] Pension Plan Assignment and Assumption Agreement") and H ("Other Benefit Plan Assignment and Assumption Agreement"). The Agreement's descriptions of other attachments, namely Schedules 4.18(c) and 11.21, suggest that they contain information about potential mass layoffs or permanently closed departments, raising the presumption of relevance. And the Agreement's description of Schedule 1.1(d) raises a presumption of relevance by suggesting it may have contained information about certain benefits, like pension contributions.

Citing *Knappton Maritime Corp.*, 292 N.L.R.B. 236, 238–39 (1988), Crozer repeatedly asserts that asset purchase agreements are not presumptively relevant. This argument ignores the law of this case. We held before that "substantial evidence supports the finding that at least some of the information in the [Agreement] was presumptively relevant." *Crozer-Chester*, 976 F.3d at 287. We "generally will not reconsider questions that another panel has decided on a prior appeal in the same case," and see no reason to

depart from that rule here. *See In re City of Philadelphia Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). So Crozer's argument about the typical relevance of asset purchase agreements cannot overcome our prior holding that portions of *this* Asset Purchase Agreement *are* presumptively relevant.

Crozer's remaining arguments fail because of the "undemanding" nature of the relevancy standard. *Crozer-Chester*, 976 F.3d at 285. Crozer objects that PASNAP Executive Director William Cruice did not testify to knowledge of the attachments' details. And echoing Board Member Ring's dissent, Crozer attacks the Board majority for "guessing" at the contents of the attachments and describing only what they "could" contain, not what they do contain. Crozer Br. 22. But PASNAP did not need to prove conclusively the contents of the attachments for the presumption of relevancy to attach. Nor was PASNAP required to establish definitively that the various attachments concerned employees in units represented by PASNAP, rather than non-unionized employees or employees represented by other unions. It needed only to show a "probability" that the attachments were relevant to PASNAP members and PASNAP's bargaining role. *See Crozer-Chester*, 976 F.3d at 285. It did so. And PASNAP's minimal burden makes sense given the asymmetry of information between Crozer, which knows the Agreement's contents, and PASNAP and the Board, which are uninformed. *See id.* at 290.

Yet we disagree with the Board's conclusion about the presumptive relevance of the portions of Schedule 4.19 that it ordered produced. The Board found that schedule presumptively relevant because it "contains labor contracts." CAR 794. But because

7

Crozer had produced the labor contracts, the Board did not order production of those documents. Substantial evidence does not support the Board's finding that the rest of the schedule—that is, the portion the Board ordered produced—was presumptively relevant. Still, we will deny Crozer's petition as it relates to Schedule 4.19 based on the Board's alternative conclusion that the attachment was established as relevant due to its relation to real property. As we explain in the next section, substantial evidence supports that conclusion.

B

When a document does "not implicate a presumption of relevance," the union bears the burden of establishing its relevance. *Crozer-Chester*, 976 F.3d at 287. We hold that substantial evidence supports the Board's conclusion that PASNAP established the relevance of 11 attachments.

Schedules 1.1(a), 1.1(f), 1.2(i), 1.2(j), 1.3(b), 4.11(e), 4.11(f), and 4.19 relate to the real-property interests of Crozer. As the Board explained, there was a probability that such information would clarify any expansion of healthcare services following the sale, especially considering the statement in Crozer's initial letter to employees that certain services "will stay in place *or be expanded*." CAR 232 (emphasis added). Expanding operations are relevant to PASNAP's bargaining as to the effect of the sale on the work sites of members.

Substantial evidence also supports the relevance of two attachments related to litigation or other claims and complaints: Schedules 4.14 and 4.18(b). Any information in these schedules about employment-related litigation or complaints would be relevant to

8

PASNAP's role as the employees' representative in such disputes.

Finally, substantial evidence supports the Board's conclusion that PASNAP established the relevance of Schedule 1.2(k), related to certain grants. Because Prospect is a for-profit entity, there is a probability that such information could affect the funding of projects or employees that require nonprofit status, and thus impact collective bargaining efforts.

Crozer's objections to the Board's conclusions about these 11 attachments fail under our deferential standard of review and the undemanding standard of relevancy. Crozer complains that the Board relied on "speculation" as to the contents of the documents, rather than determining definitively what they contained and what that might mean for PASNAP members. But as we noted, the relevancy standard requires far less. Substantial evidence supports the Board's conclusion that there was a "probability that the desired information is relevant" to the Union's bargaining role. *See Crozer-Chester*, 976 F.3d at 285 (cleaned up).

\* \* \*

When this case was last before us, we held that "[u]nder the expansive standard for relevance and according proper deference to the Board's finding of relevance, we perceive no reason to upset the Board's determination that parts of the [Agreement] were relevant." *Id.* at 286. Applying that same lenient standard and granting the same deference here, we see no reason to overturn the Board's more specific relevancy determinations. We will deny the petition for review and grant the Board's cross-application for enforcement of its order.

9